**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DAPHANIE MARTIN                    :
o/b/o L.W.,                        :
                                   :
    Plaintiff,                  :
                                   :  CASE NO. 3:23-cv-1181(RAR)
    v.                          :
                                   :
O'MALLEY, COMMISSIONER OF          :
SOCIAL SECURITY,                   :
                                   :
    Defendant.                  :

## RULING ON PENDING MOTIONS

The Plaintiff, Daphanie Martin, on behalf of her minor son L.W. ("the claimant"), brings this appeal pursuant to 42 U.S.C. § 402(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") finding that her son is not disabled within the meaning of the Social Security Act. Currently pending before the Court are Plaintiff's motion for an order reversing or remanding the claimant's case for a hearing (dkt. #19) and Defendant's motion to affirm the decision of the Commissioner (dkt. #24).

For the following reasons, the Defendant's motion to affirm is GRANTED and the Plaintiff's motion to remand is DENIED.

1

I.   **Legal Standard**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . ." 42 U.S.C. § 405(g).  Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  Id.; Wagner v. Sec'y of Health and Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence.  Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to

support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." Williams, 859 F.2d at 258.

Under the Social Security Act, a child under the age of eighteen is disabled if the child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine if a child is disabled, the Administrative Law Judge ("ALJ") engages in a three-step analysis.  First, "the ALJ must determine if and when the child last engaged in substantial gainful activity." Gonzalez ex rel. T.H. v. Colvin, No. 3:13-CV-979, 2015 WL 540690, at *16 (D. Conn. Feb. 10, 2015) (citing 20 C.F.R. § 416.924).  If the ALJ finds that the child is not engaging in substantial gainful activity, the ALJ will consider the child's physical or mental

impairments to determine if the claimant has a physical or mental impairment that is severe.  20 C.F.R. § 416.924(a).  If the ALJ finds a severe impairment or combination of impairments, the ALJ will review the claim to determine whether the claimant's impairments meet, medically equal, or functionally equal the listings.  Id.

To determine whether the claimant's impairment is functionally equivalent to a listing, the ALJ will examine the degree to which the claimant's limitations interfere with the following six domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks, (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.[1]  20 C.F.R. § 416.926a(b)(1).  A claimant's impairment functionally equals a listing if the impairment causes a "marked" limitation in at least two domains of functioning or an "extreme" limitation in at least one domain.[2]

---

[1] The regulations contain more specific guidance for the ALJ in considering the domains of functioning, which will be discussed in this ruling where relevant.

[2] The regulations define a "marked limitation" as one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i). This limitation is equivalent to "the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  Id.  An "extreme limitation" is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete

4

Id. § 416.926a(a).  The Social Security regulations provide that limitations in the domains of functioning that support a finding of disability "must result from [the claimant's] medically determinable impairment(s)."  Id. § 416.926a(g)(3), (h)(3), (i)(3), (j)(3), (k)(3), (l)(3).

## II.  **Procedural History.**

Plaintiff filed an application for supplemental social security income under Title XVI on behalf of her minor son L.W. on June 29, 2020, alleging a disability onset date of May 8, 2018.  (R. 11).[3]  Following an initial denial and then denial on reconsideration, ALJ John Aletta held a hearing on December 9, 2021.  (R. 22).  Following the hearing, ALJ Aletta issued a written decision denying Plaintiff's application on May 20, 2022.  (R. 16).  Plaintiff thereafter sought review by the Appeals Council, which was denied on July 6, 2023.  (R. 1).  Plaintiff timely filed this action seeking judicial review.  (Dkt. #1).

## III.  **The ALJ's Decision**

After applying the three-step evaluation process, the ALJ concluded that the claimant was not disabled within the meaning

---

activities" and is the rating given "to the worst limitations."  20 C.F.R. § 416.926a(e)(3)(i).

[3] The Court cites pages within the administrative record as "R. __."

of the Social Security Act from the date the application was filed, June 29, 2020, through the date of the ALJ's decision. (R. 16).  At step one, the ALJ found that the claimant had not engaged in substantial gainful activity on or after the application date of June 29, 2020.  (R. 12).  At step two, the ALJ found that the claimant had the severe impairment of a language delay.  (R. 12).  At step three, the ALJ first found that the claimant's impairment did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 12).  In making this finding, the ALJ specifically considered Listing 111.09 for communication impairment, but found that the objective medical evidence did not establish a documented neurological disorder and a speech deficit which significantly affects the clarity and content of the speech; a comprehension deficit resulting in ineffective verbal communication for age; or a hearing impairment as described in Listings 102.10 or 102.11.  (R. 12).

Continuing in step three, the ALJ found that the claimant did not have an impairment or combination of impairments that functionally equals any listing.  (R. 13).  In making this finding, the ALJ considered the six domains of functioning.  Id. The ALJ concluded that the claimant had a marked limitation in interacting and relating with others, a less than marked limitation in acquiring and using information, and no limitation

in attending and completing tasks, moving about and manipulating objects, in the ability to care for himself, and in health and physical well-being.  Id.

In reaching these conclusions, the ALJ considered the medical opinions, objective medical evidence and other evidence from medical sources, other evidence in the record, and the Plaintiff's testimony.  (R. 13-16).  The ALJ summarized the Plaintiff's contentions regarding the claimant's speech delay, noted that the claimant has an individualized education program ("IEP"), and struggles with speech and language skills.  (R. 14).  The ALJ noted Plaintiff's report that the claimant is enrolled in special education for which he is pulled out of his classes, and that he struggles with speech comprehension.  Id.

After considering the evidence, the ALJ concluded that the Plaintiff's allegations concerning the intensity, persistence, and limiting effects of the claimant's impairment were not entirely consistent with the medical evidence and other evidence in the record.  Id.  The ALJ considered a speech and language evaluation performed in March 2021 by Kathy Przywara, MA, SLP, which showed that the claimant's articulation skills were moderately to severely delayed and that several errors were made that should be diminished or absent at the claimant's age.  Id. The evaluator recommended that the claimant receive weekly one-

hour services to facilitate speech intelligibility.  Id.
However, this evaluation also showed that the claimant's
receptive and expressive skills, voice, and fluency were all
age-appropriate, that a cognitive assessment showed the
claimant's IQ in the average range, and that the claimant
displayed average visual-spatial and logical thinking abilities
even though his processing speed was in the borderline range.
Id.  The evaluation noted the claimant's prognosis for
improvement was favorable.  Id.

   The ALJ considered medical opinions regarding the claimant's
limitations from two state agency consultants and from speech
and language pathologist Elaine Siegel.  (R. 15).  In
considering these opinions, the ALJ found them persuasive.  (R.
16).  The ALJ also considered an assessment from the claimant's
special education teacher Angela Hewins from April 2022 and
found it partially persuasive.  (R. 15).

### IV.  **Discussion**

> A. *The ALJ did not err in concluding that the claimant
>    had a marked, but not extreme, limitation in
>    interacting and relating with others.*

   The Plaintiff claims that the ALJ erred in his evaluation
of the evidence by "cherry-pick[ing] examples from the medical
records to support his conclusion and ignored contradictory
evidence and Plaintiff's testimony at the hearing."  (Dkt. #19-1

at 6).  The Plaintiff argues that the ALJ should not have considered the fact that the claimant does not take prescription medication without indication that prescription medication is an "available or relevant treatment" for the claimant's speech and communication issues.  Id. at 7.  Next, the Plaintiff argues that the ALJ misstated the Plaintiff's testimony.  Id.  The Plaintiff then lists examples of evidence in the record which detail the claimant's language and speech issues, which are unaccompanied by argument.  Id. at 7-10.

It appears that the Plaintiff is arguing that the ALJ's errors in evaluating the evidence regarding the claimant's speech delay improperly affected the ALJ's determination that the claimant has a marked limitation in interacting and relating with others rather than an extreme limitation.[4]  According to the Social Security regulations, the "interacting and relating with

---

[4] Plaintiff's brief argues that the ALJ erred at step two of the analysis.  (Dkt. #19-1 at 6).  However, upon review of the ALJ's decision, at step two the ALJ concluded that the claimant's language delay constituted a severe impairment.  (R. 16).  Additionally, the substance of the section in which Plaintiff makes this claim discusses the claimant's language delay, where the Plaintiff claims that the ALJ incorrectly recounted some of Plaintiff's testimony, and then ignored other parts of Plaintiff's testimony stating it is hard to understand the claimant's speech.  (Dkt. #19 at 6-7).  Accordingly, the undersigned will evaluate this argument in accordance with the requirements of step three and consider whether the ALJ properly evaluated the Plaintiff's testimony when determining that the claimant has a marked limitation in interacting and relating with others.  (R. 17).

others" domain considers "how well [the claimant] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [the claimant's] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others."  20 C.F.R. § 416.926a(i)(1).  According to the regulations, preschool children between the ages of 3 and 6 should be able to, *inter alia*, "initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what [they] say most of the time."  Id. § 416.926a(i)(2)(iii).  Between the ages of 6 and 12, children should, *inter alia*, be able to "talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand."  Id. § 416.926a(i)(2)(iv).  Examples of issues in this area can include "difficulty communicating with others...[and] carrying on a conversation," as well as "difficulty speaking intelligibly or with adequate fluency."  Id. § 416.926a(i)(4)(v)-(vi).

The ALJ found that the claimant had a "marked" limitation in this domain.  (R. 13).  The Social Security regulations define a marked limitation as one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. §

416.926a(e)(2)(i).  Plaintiff's argument suggests that had the ALJ properly evaluated the evidence, he would have found that the claimant had an "extreme" limitation, which is defined as one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "Extreme" is the rating the Social Security Administration gives to the "worst limitations."  Id.

Here, as Plaintiff's argument "amounts to a request that the Court reweigh the evidence before the ALJ," remand is inappropriate.  K. J. v. Kijakazi, No. 3:20-CV-1372 (SVN), 2022 WL 972442, at *5 (D. Conn. Mar. 31, 2022).  The Plaintiff contends that the ALJ "cherry-picked" evidence from the record to support his conclusion that claimant has a marked limitation in interacting and relating with others. (Dkt. #19-1 at 6).  However, "cherry-picking" is "not the proper term to apply when an ALJ 'consider[s] the bad as well as the good' from a given source."  Lisette R. o/b/o C.J.O. v. Kijakazi, No. 3:22-CV-00784-TOF, 2023 WL 6357961, at *4 (D. Conn. Sept. 29, 2023) (quoting Sheila Renee H. v. Kijakazi, No. 3:21-cv-944 (TOF), 2022 WL 4181723, at *7 (D. Conn. Sept. 13, 2022)).  While Plaintiff lists examples of evidence from the record that demonstrate the claimant's speech issues, there is no indication that this evidence was ignored.

For instance, in the section in which Plaintiff argues that the ALJ cherry-picked evidence in the record, Plaintiff provides a summary of the speech and language evaluation conducted by K. Przywara of Goodwin Elementary School.  (Dkt. #19-1 at 7-8).  This evaluation was summarized in great detail in the ALJ's decision cited in support of the ALJ's statement that the claimant has a "history of speech and language delay."  (R. 14).  Plaintiff also cites and provides short summaries of evidence from the claimant's special education teacher, Angela Hewins.  (Dkt. #19-1 at 8).  Ms. Hewin's evaluation was also summarized in the ALJ's decision.  (R. 15).  Notably, Ms. Hewins reported that the claimant "has no problems interacting and relating with others," which the ALJ found to be inconsistent with other evidence in the record showing "ongoing speech difficulties consistent with marked limitation in interacting and relating with others."  Id.  The Plaintiff also lists notes from medical providers from Connecticut Children's which discuss the claimant's speech disorder.  (Dkt. #19-1 at 8-10).  While not explicitly summarized by the ALJ, several of the records which the Plaintiff points to are cited in the ALJ's opinion as supportive of the finding that the claimant has a marked limitation in interacting and relating with others.  See (R. 14).

Some of the evidence the Plaintiff relies on is not cited to or discussed in the ALJ's opinion. However, "an ALJ does not need to cite every piece of evidence supporting disability to avoid a charge of having ignored it." Lisette R. o/b/o C.J.O. v. Kijakazi, No. 3:22-CV-00784-TOF, 2023 WL 6357961, at *4 (D. Conn. Sept. 29, 2023).  This is especially true where the evidence the ALJ is charged with ignoring is duplicative or insubstantial.  For example, Plaintiff cites page 425 of the administrative record (dkt. #19-1 at 9), which is a cover sheet sent to claimant's primary care provider with information regarding Plaintiff's visits to the Connecticut Children's Audiology Department.  (R. 425).  The claimant's records of those visits to Connecticut Children's Audiology Department are contained in Exhibit 3F, which is cited by the ALJ in support of his statement that "[t]he medical evidence demonstrates a history of speech and language delay."  (R. 14).

Even when the Court might have reached a different conclusion than the ALJ, where the ALJ weighed the conflicting evidence and interpreted it in accordance with the regulations promulgated by the Social Security administration, remand is not warranted.  Barrere v. Saul, 857 Fed. App'x 22, 24 (2d Cir. 2021).

*B. Attending to and completing tasks.*

Plaintiff also claims that the ALJ erred in concluding that the claimant "had no limitations in the initiation/completion of tasks domain," arguing that the opinions of the state agency consultants were contradicted by Plaintiff's own testimony that the claimant had difficulty completing tasks and cannot focus on activities for a sustained period.  (Dkt. #19-1 at 6). Plaintiff's argument regarding this issue is not entirely clear. On one hand, Plaintiff may be contending that the ALJ should not have considered the state agency consultants persuasive because they concluded that the claimant had no limitations in the initiation and completion of tasks domain, and therefore their conclusions regarding the claimant's language delay should not have been credited.  On the other hand, the Plaintiff may be claiming that the ALJ should have concluded that the claimant had either a less than marked or a marked limitation in the initiation and completion of tasks.  In consideration of the Plaintiff's <u>pro se</u> status, the undersigned will consider both arguments.

> i. <u>*The ALJ did not err in concluding that the claimant has no limitation in the attending and completing tasks domain.*</u>

The Plaintiff argues that the ALJ improperly credited the state agency consultants' opinions that the claimant has no

limitations in the initiation and completion of tasks domain, because those conclusions were "contradicted by Plaintiff's testimony at the hearing that [the claimant] had difficulty completing tasks and could not focus on activities for a sustained period of time."  (Dkt. #19-1 at 6).

Throughout the relevant period, Plaintiff consistently reported that the claimant had a hard time paying attention for more than 15 to 30 minutes.  (R. 177, 195, 204, 221, 298).  The Plaintiff's testimony was consistent with these reports, and Plaintiff testified that the claimant can have problems paying attention and completing tasks, is easily distracted, and does not like to sit for very long.  (R. 37).  Additionally, in 2021, the school psychologist Ms. Deorarine reported that the claimant had clinically significant concerns with regards to attention problems while remote learning, and recommended continued monitoring as he transitioned back to in-person learning.  (R. 225).  As Defendant notes, one of the claimant's teachers, Ms. Hewins, filled out a teacher questionnaire for the claimant. (R. 341).  For almost all of the activities that correspond to the attending and completing tasks domain, Ms. Hewins concluded that the claimant had either slight problems or no problems. (R. 343).  The only activity where Ms. Hewins found that the claimant had an "obvious problem" is with organizing his own things or school materials.  Id.  Ms. Hewins did not indicate

that the claimant had a "serious problem" or a "very serious problem" for any of these activities.  Id.  Additionally, when evaluating the claimant in the domain of acquiring and using information, Ms. Hewins noted that the claimant completes all of his work, and that his main struggles were with reading on grade level and verbal expression.  (R. 342).  Plaintiff's testimony corroborated this, stating that the claimant's teachers "haven't been so concerned" about problems with the claimant paying attention in school.  (R. 40).  Plaintiff also testified that the only impairment the claimant has been diagnosed with is a speech impairment.  (R. 31).

When an ALJ considers the evidence of record in determining the degree of the claimant's limitation in the six domains of functioning, he must first determine whether the claimant's limitations in functioning result from a medically determinable impairment.  20 C.F.R. § 416.924a(b)(2).  Then, the ALJ must evaluate the symptoms of that impairment to determine the extent to which those symptoms limit the claimant's functional abilities.  The Social Security Administration has explained that for the ALJ to consider a claimant's limitation in a domain of functioning as part of a disability application, the limitation "must result from [the claimant's] medically determinable impairment(s)."  20 C.F.R. § 416.926a(h)(3).  *See also* Title Xvi: Determining Childhood Disability-the Functional

Equivalence Domain of "Attending & Completing Tasks", SSR 09-4P, at *3 (S.S.A. Feb. 18, 2009).

While the case law on this issue is relatively limited within the Second Circuit, district courts in other circuits have emphasized the requirement that to be considered as part of a disability evaluation, a claimant's asserted limitation must flow from a medically determinable impairment.  For example, in Samuels v. Colvin, No. CV 1:15-3086-PMD-SVH, 2016 WL 3101965 (D.S.C. Apr. 29, 2016), report and recommendation adopted, No. 1:15-3086-PMD-SVH, 2016 WL 3079707 (D.S.C. June 1, 2016), the ALJ found that the Plaintiff had no limitation in the attending and completing tasks domain even though the Plaintiff alleged a diagnosis of ADHD.  Id. at *9.  The ALJ found that the record contained no medical evidence to support this diagnosis, and that the Plaintiff's IEP was related to his hearing problems rather than his ability to attend to and complete tasks.  Id. The Honorable Shiva V. Hodges found that the ALJ did not err by concluding that the Plaintiff had no limitations in this domain, and stated "it is improper for the ALJ to consider any alleged limitation in functioning that does not result from a medically determinable impairment."  Id.

As another example, in Russell v. Astrue, 742 F. Supp. 2d 1355 (N.D. Ga. 2010), the Honorable Alan J. Baverman found that

the ALJ did not err in failing to consider Plaintiff's alleged psychological impairment and the limitations stemming from that impairment because there was "no evidence from an acceptable medical source that Plaintiff suffered from any mental impairments." Id. at 1375.[5]  In making this determination, the court noted that the Social Security regulations require "that an acceptable medical source make the determination about whether a plaintiff suffers from an impairment." Id.

Here, the record contains no suggestion that the claimant has a mental or physical impairment other than his speech delay, and the Plaintiff has not alleged any impairment that would cause issues in the attending and completing tasks domain.  The only impairment alleged by Plaintiff is a developmental delay that affects the claimant's speech and causes him issues in communicating with others.  There is some evidence in the record of the claimant having issues with focus, however, it would be entirely speculative for the ALJ or the undersigned to find that

---

[5] After concluding that the ALJ did not err for failing to consider limitations that were not linked to a medically determinable impairment, the Court reversed and remanded the ALJ's decision on a different basis. Russell v. Astrue, 742 F. Supp. 2d 1355, 1375 (N.D. Ga. 2010) (finding the ALJ "(1) did not err by failing to examine limitations from mental impairments along any of the domains of functioning, (2) did not err in evaluating the general health and well being domain, but (3) did err in his examination of the moving about domain").

the claimant's issues with focus are attributable to his speech
delay, his only medically determinable impairment.

Even if Plaintiff argues that the ALJ should have found
greater limitation in this area based on her testimony, the
Plaintiff's burden for remand is to "show that no reasonable
factfinder could have reached the ALJ's conclusions on this
record." Angelina P. o/b/o Angel M. v. Kijakazi, No.
3:20CV278(MPS), 2021 WL 3856206, at *6 (D. Conn. Aug. 30, 2021)
(citing Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448
(2d Cir. 2012)). Here, where there is no evidence in the record
to show that the claimant's issues with focus are due to a
medically determinable impairment, the Plaintiff has not met
that burden.

> ii. *The ALJ did not err in evaluating the*
> *persuasiveness of the state agency consultants'*
> *opinions.*

The Plaintiff asserts that the ALJ should not have credited
the opinions of the state agency consultants finding that the
claimant had no limitation in the initiation and competition of
tasks domain. The Plaintiff argues that the ALJ did not
sufficiently explain "why he credited this conclusion, which was
contradicted by Plaintiff's testimony at the hearing that [the
claimant] had difficulty completing tasks and could not focus on
activities for a sustained period of time." (Dkt. #19-1 at 6).

When evaluating medical evidence, an ALJ is required to
consider certain factors, including (1) whether objective
medical evidence supports and is consistent with the opinion;
(2) the relationship between the medical source and the
claimant; (3) the medical source's specialty; and (4) other
factors that "support or contradict a medical opinion[.]"  20
C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ is required
to explain how he considered the "supportability" and
"consistency" factors in the evaluation, but need not explain
how he considered the secondary factors unless two or more
medical opinions regarding the same issue are equally supported
and consistent with the record but not identical.  20 C.F.R. §
404.1520c(b).

In support of her argument that the ALJ did not adequately
explain why he credited the opinions of the state agency
consultants, Plaintiff cites Kyle Paul S. v. Kijakazi, No. 3:20-
CV-01662 (AVC), 2021 WL 6805715 (D. Conn. Nov. 16, 2021).  In
Kyle Paul S., the Honorable Alfred V. Covello remanded the
Plaintiff's case for a rehearing because the ALJ did not
adequately explain how he evaluated the supportability and
consistency of the medical opinion evidence.  Id. at *8.  Among
other things, the ALJ found the opinion of one of the
plaintiff's treating physicians was only "partially persuasive"
because the ALJ found the physician's opinion that the plaintiff

had limitations in completing a workday or workweek to be "not consistent" with a single treatment note showing the plaintiff had a good response with medications and maintained a stable mood, which was arguably irrelevant, and where the bulk of the treatment notes were consistent with the physician's opinion. Id. at *7.  Additionally, the ALJ found that the state agency consultants' opinions were persuasive and provided only the following explanation in support: "[t]hese assessments take into account all of the treatment records."  Id. at *8.  This explanation was clearly not sufficient to fulfill the ALJ's obligation under the regulations.

Here, in contrast, the ALJ stated that the state agency consultants' opinions were persuasive as he found "[t]hey are supported by their review of the record and are generally consistent with the objective evidence of record."  (R. 15). The ALJ goes on to describe a speech evaluation from March 2021 that is consistent with the finding that the claimant has a marked limitation in interacting and relating with others due to speech difficulties.  (R. 15).  The ALJ then described Plaintiff's testimony which the ALJ found to be consistent with the state agency consultants' conclusions that the claimant has a marked limitation in interacting and relating with others. (R. 15).

When analyzing medical opinion evidence, an ALJ must both identify evidence that supports his conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).  While remand may be appropriate where an ALJ's conclusory statements regarding supportability and consistency "offer no insight into 'how well [either doctor] supported and explained their opinion,'" that is not the case here.  Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (quoting Vellone v. Saul, No. 120CV00261RAKHP, 2021 WL 319354 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul, No. 20-CV-261 (RA), 2021 WL 2801138, at *6 (S.D.N.Y. July 6, 2021)).  In the instant case, the ALJ evaluated the state agency consultants' opinions and provided specific examples of evidence in the record which were consistent with those opinions.  While not explicitly mentioned in the ALJ's opinion, Dr. Decarli reviewed the claimant's file for evidence of a limitation in attending and completing tasks but found that the claimant had no limitation in this domain because the record contained no diagnosis of ADHD and the claimant's speech and language evaluations contained notes that the claimant displayed "joint attention" while being evaluated. (R. 47).  Similarly, Dr. Hill considered the record for evidence

of limitations in this domain, found there was no significant prognosis, and concluded that the claimant had no limitation in attending to and completing tasks.  (R. 57).

In determining that the state agency consultants' opinions were persuasive, the ALJ adequately discussed the supportability and consistency of those opinions and provided specific examples of how they aligned with the other evidence of record. Accordingly, the ALJ met his burden pursuant to regulations and the determination that the state agency consultants' opinions were persuasive does not constitute error.

**V.   <u>Conclusion</u>**

The Commissioner's motion to affirm the decision of the Commissioner (dkt. #24) is GRANTED and the Plaintiff's motion for an order reversing or remanding the Commissioner's decision (dkt. #19) is DENIED.

SO ORDERED this 6th day of August, 2024 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge